IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DARLENE LANELL HOSEA,          )
                               )
VS.                            )          CASE NO. 4:06-CV-434
                               )
AMERIQUEST MORTGAGE            )
COMPANY AND                    )
WELLS FARGO BANK               )

## PLAINTIFF'S RICO CASE STATEMENT

Plaintiff Darlene Lenell Hosea, through Afton Jane Izen, her attorney of record, hereby files Plaintiff's RICO Case Statement.

Respectfully submitted,

//ss// AFTON JANE IZEN

Afton Jane Izen
Texas Bar No. 10443400
5222 Spruce Street
Bellaire, Texas 77401
(713) 661-6238
(713) 661-6239 (Fax)

ATTORNEY FOR PLAINTIFF,
DARLENE LENELL HOSEA

1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Plaintiff's RICO Case Statement has been served on all counsel of record by electronic, facsimile transmission and/or by U. S. Mail, postage prepaid, on this the 28th day of August, 2006.

//ss// AFTON JANE IZEN

_____

Afton Jane Izen

2

## CIVIL RICO CASE STATEMENT

The named Plaintiff, through counsel, files this Civil RICO Case Statement.

Throughout this Civil RICO Case Statement reference may be made to the Original Complaint by paragraph to the extent that the allegations in such paragraphs relate to responses in this Civil RICO Statement.

1. State whether the alleged unlawful conduct is in violation of 18 U. S.C. §§ 1962 (a), (b), (c), and/or (d).

All of the above.

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

Defendants:

a. Ameriquest

b. Wells Fargo

Misconduct and Basis of Liability.

This case arises from all Defendants' systematic and intentional concealment of accurate information and misrepresentations to Plaintiff.

The Defendants have engaged in a conspiracy and a common fraud scheme designed to systematically and illegally cloud the title to Plaintiff's homestead, which is situated in Houston, Harris County, Texas, and to impair her ability to market and to sell the property, and/or to do business on the property, thereby interfering with interstate commerce.

Defendants have implemented this scheme through a complex web of mail and wire fraud, extortion, and other illegal acts.

Defendants have deceptively manipulated, maneuvered, and exploited Plaintiff.

Defendants knowingly continue to engage in their conspiracy and their fraudulent scheme.

With respect to the mail and wire fraud violations, for purposes of executing and/or attempting to execute their scheme to defraud and to obtain money and property by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. §1343, placed in post offices and/or in authorized repositories for mail to be sent or delivered by the Postal Service and received mail therefrom, including but not limited to agreements, correspondence, payments, reports, data, statements, faxes, responses, and other mailed items. With respect to the wire fraud violations, for the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money and/or property by means of false pretenses, representations or promises, the Defendants, in violations of U.S.C. §1343 transmitted and received by wire matter and things therefrom, including but not limited to agreements, correspondence, payments, data, statements, faxes, responses, and other items by wire. The things sent, or delivered, falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiff in violation of 18 U.S.C. §§1341 and 1343, including but not limited to the following:

A.    Defendants concealed and failed to disclose that they deliberately intended to obtain Plaintiff's real property, which was more valuable than the loan, when she defaulted. Plaintiff's income tax records and her employment records indicated at the time that she was not in the financial position to repay the loan.

B.    Defendants concealed and failed to disclose that no survey was done, and that real property tax records showed that the land involved was more one acre, and that a home equity loan would be in violation of Article XVI, Section 50(a)(6), of the Texas Constitution, and that Defendant Ameriquest had the duty to inform Plaintiff, and not to remain silent and to deceive her.

C.    Defendants concealed and failed to disclose that they had developed a scheme to manipulate Plaintiff.

D.    Defendant Ameriquest routinely bends the law as is shown in the Complaint against it filed by the Attorney General of the State of Texas. Said departures from the law have affected Plaintiff, and continue to affect Plaintiff herein.

F.      Defendants either knew, or recklessly disregarded, that the misrepresentations and omissions described above were material, and that Plaintiff would rely on the misrepresentations and omissions.

G.      Defendants utilized their dominant political and economic power to coerce Plaintiff into taking certain actions and into entering into a loan, when she requested a sponsorship from Ameriquest..

H.      Defendants' dominant economic and political power is exacerbated and enforced through the enterprise, conspiracy, and aiding and abetting, alleged in Plaintiff's Second Amended Complaint, and in this RICO Case Statement.

I.      Defendants have refused to meaningfully negotiate regarding a resolution of this dispute.

J.      Defendants have engaged in extortionate conduct through the use of their market power and their position over Plaintiff's homestead, which constitutes an illegal scheme to deny Plaintiff her rights, and has caused damage to Plaintiff.

K.      Defendants have engaged in extortionate conduct through the use of their respective positions on the Board of Directors, as elder of the tribe and as employees of the tribe, to strip the descendants of Robert L Rice and their children of their Indian blood, culture, and heritage.

L.      Defendants have engaged in conduct to illegally attempt to obtain a lien on Plaintiff's homestead, via a home equity loan, in violation of Article XVI, Section 50(a)(6), of the Texas Constitution.

M.      Defendants' extortionate conduct was undertaken for purposes of accomplishing Defendants' scheme and artifice to defraud Plaintiff, and to deprive her of property rights.

N.      Defendants' conduct constitutes interfering with, obstructing, delaying or affecting "commerce" as the term is defined in 18 U.S.C. §1951 by "extortion" as defined in 18 U.S.C. §1951 (b)(2).

O.      The Defendants unlawfully attempted to and/or did induce Plaintiff to enter into the transaction in violation of 18 U.S.C. §1951 (b)(2).

P.      Defendants, during all relevant times herein acted in concert, as agents

5

or administrators, in furtherance of their scheme to defraud the Plaintiff.

Q.    One or more of the Defendants created and provided incentives to Plaintiff to improperly delay or deny her rights to her homestead property. Defendants have not undertaken the above practices and similar activities in isolation, but instead have done so as part of a common scheme and conspiracy. The conspiracy could not have been effected without the enthusiastic participation of all of the conspirators.

R.    Each defendant, with knowledge and intent, agreed to the overall objective of the conspiracy, and each defendant committed at least two predicate acts, and each defendant verbally agreed to participate in the conspiracy. Each defendant also, with knowledge and intent, agreed to and did aid and abet all of the illegal activities, RICO predicate acts, and RICO violations.

S.    As relevant to the basis of liability for each Defendant, each Defendant satisfies the definition of a "person" within the meaning of 18 U.S.C. §1961 9 c, and each Defendant continues to pose a threat to Plaintiff, and to others.

T.    For purposes of the asserted violation of Section 1962(d) by a conspiracy to violate Sections 1962(a) and 1962(c), Defendants, and others mentioned, constituted an "enterprise" within the meaning of RICO under 18 U.S. C. §1961(4) and 1962(a).

U.    In carrying out the overt acts and fraudulent and extortionate scheme described above, the Defendants have, and continue to engage in, inter alia, conduct in violation of federal laws, including 18 U.S.C. §1341 and 1343 (mail and wire fraud), U.S C. §1341 and 1346 (mail fraud), 18 U.S.C. §1343 and 1346 (wire fraud), 18 U.S.C. § 1951 (b) (2) extortion, and 18 U.S.C. §1961, et seq. (RICO). This conduct constitutes predicate acts of "racketeering activity", as defined in 18 U.S.C. §1961:

(1) The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the Defendants are related to each other and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).

(2) Defendants have participated in or conducted the affairs of the Enterprise through the pattern of racketeering activity; and Defendants have conspired and aided and abetted each other in these RICO violations. Plaintiff is being egregiously injured in her person and her property rights as a result of by

6

Defendants' nefarious overt acts and fraudulent and extortionate conduct in violation of 18 U.S.C. §1962-c and (d) and 18 U.S.C. §2.

(3)   Plaintiff is entitled to compensatory damages in an amount to be determined at trial, the principal of which Plaintiff "shall recover threefold" pursuant to 18 U.S.C § 1964 c. Plaintiff's seeks damages for injury to her person, to her property and to her business. Said damages include actual damages, treble damages, punitive damages, prejudgment and post-judgment interest, costs of suit, attorneys' fees, and such other relief as the court deems just and appropriate.

3.   **List the wrongdoers, other than the Defendants listed above, and separately state the misconduct of each wrongdoer.**

No other wrongdoers are known at this time. Plaintiff reserves the right to supplement this response if and when other wrongdoers become known during the process of discovery.

4.   **List the alleged victims, and separately state when and how each victim was injured.**

Plaintiff and her family members are the alleged victims:

The perpetrators illegally and wrongfully usurped real and personal property and interests in real and personal property that rightfully belong to Plaintiff, as well as damage to her business, and mental anguish and emotional distress.

5.   **Describe in detail the pattern of racketeering activity alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

a.   **List the alleged predicate acts and the specific statutes which were allegedly violated.**

There exist numerous predicate acts of mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343), fraudulent concealment, affirmative misrepresentations by defendants constituting "additional acts of concealment", and cover-ups, theft, extortion (18 U. S.C. §1951). These predicate acts constitute a pattern of racketeering through which defendants have violated 18 U.S.C. §1962 (a), (b), ©) and (d).

Further, please refer to Paragraph 2, Misconduct and Basis of Liability of Each Defendant", which is incorporated herein by reference.

**b./c. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts.**

The facts surrounding the predicate acts and defendants' motives for and participation in these predicate acts have been and continue to be consistent for each predicate act described herein. Additionally, the acts are ongoing. The predicate acts consist of multiple acts of mail fraud, wire fraud, extortion, theft, fraudulent concealment, cover-ups, fraudulent accounting practices and Article XVI, Section 50(a)(6), of the Texas Constitution. The date of the predicate acts began as early as May 26, 1998, September 21,1999 and September, 2004.

The participants in the predicate acts include all Defendants, as well as possible third parties not known at this time and not named as Defendants herein. There are also certain unknown coconspirators and aiders and abettors that may be identified after discovery has taken place.

The facts and circumstances surrounding defendants' predicate acts clearly evidence a fraudulent and extortionate scheme constituting a pattern of racketeering:

(1)     Defendants have fraudulently conspired among themselves to conceal the fact that the loan and lien on Plaintiff's homestead is illegal, and is in violation of Article XVI, Section 50(a)(6), of the Texas Constitution.

(2)     Defendants have made fraudulent misrepresentations to Plaintiff, which based on said fraudulent misrepresentations, caused her to be a victim of extortion, to lose business, caused her mental and emotional distress, and destroyed her credit reputation.

(3)   Defendants have engaged in multiple acts of extortionate conduct designed to threaten Plaintiffs, and through fear of threats, and fear of economic loss and/or loss of jobs and/or business, and/or property, allow Defendants to extort property from Plaintiff that rightfully belongs to Plaintiff;

(4)     Defendants have influenced, interfered with and deprived and/or threatened to deprive Plaintiff of her right and entitlement to certain moneys and property over which Defendants have clouded the title with an illegal lien;

8

(5)   Defendants committed predicate acts of mail fraud and wire fraud to disseminate fraudulent misrepresentations to Plaintiff and to the community at large, to Plaintiff's injury.

The predicate acts occurred, and continue to occur, on a regular and on-going basis.

Plaintiff reserves the right to supplement this answer to provide specific details regarding dates, times, places and contents of misrepresentations made by perpetrators after Plaintiffs have had the opportunity to have discovery in this case.

**(i)   Violations of 18 U.S.C. Section 1341, which prohibit the use of the mail in Interstate and foreign commerce in furtherance of any scheme or artifice to defraud;**

Defendants' scheme and artifice to defraud Plaintiff contemplated, and in fact, required, the regular and systematic use of the United States Mail and wire communications to effectuate the scheme among other things.

(a) Defendants disseminated fraudulent misrepresentations to Plaintiffs, and to the community at large, by the use of the United States Postal Service on numerous occasions; and (b) Defendants conspired with each other and schemed through the use of telecommunication lines. The incidents of mail and wire fraud committed in furtherance of the scheme or artifice to defraud are numerous, and are more than the requisite number necessary for a RICO complaint.

**(ii)   Violations of 18 U.S.C. Section 1343, which prohibit the use of wire communications in furtherance of any scheme or artifice to defraud:**

Defendants' scheme and artifice to defraud Plaintiff contemplated, and in fact, required, the regular and systematic use of the United States Mail and wire communications to effectuate the scheme. Among other things, Defendants submitted fraudulent information and documents to each other and to third parties electronically, by mail, by facsimile transmission and/or by telephone communication

**(iii) Violations of 18 U.S.C. Section 1951 (Extortion).**

Defendants have routinely used their economic and market power and

9

threats of termination ownership to force Plaintiff to forego her legal rights, and Defendants have used their economic and market power to wrongfully retain money, property, and other benefits to which Plaintiff is entitled for Defendant's illegal financial gain. Such actions violate federal laws related to the crime of extortion.

To instill the fear of threats, misuse of authority or by any undue exercise of power violates 18 U.S.C. § Section 1951 related to extortion. Plaintiff has been damaged as a result of Defendants' extortionate threats.

**a.   State whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity:**

Plaintiff is not aware of any criminal convictions for the commission of the predicate acts.

**b.   State whether civil litigation has resulted in a judgment in regard to each predicate act;**

Plaintiff is aware of a civil suit filed Cause No. 2006-1304, in the 327th Judicial District Court of El Paso County, Texas, on March 21, 2006, styled The State of Texas v. Ameriquest Mortgage Company, and others.   An Agreed Final Judgment and Permanent Injunction was entered that same day. Among other causes of action, Ameriquest was accused of Deceptive Trade Practices. The AG found (1) that the Ameriquest parties failed to provide timely and adequate information to borrowers concerning the amount an purpose of "discount" points and fees imposed on their loans; (2) that the Ameriquest parties made deceptive or misleading representations or omissions regarding loan terms and charges, including, but not limited to, the interest rate of the loan, misrepresenting the presence or the mechanics  of the adjustable rate feature of the loan, failing to disclose the interest rate or the material costs of the proposed loan when known to the Ameriquest parties, failing to properly disclose to potential borrowers whether the proposed loan payment included escrowed taxes and insurance payments, misrepresenting the credit status of potential borrowers, and falsely promising borrowers the ability to refinance at a later date as an inducement to enter into the loan;   (3) that the Ameriquest parties engaged in a practice of misleading borrowers about the presence, the significance or meaning of  prepayment penalty and/or the duration of a prepayment penalty on their loans, and made false misrepresentations that the prepayment penalties could be waived; (4)  that the Ameriquest parties engaged in the practice of soliciting existing Ameriquest

10

borrowers to refinance within the first 24 months of their loans; (5) that the Ameriquest parties engaged in deceptive or misleading acts and practices which resulted in their obtaining inflated appraisals that were substantially in excess of the market value of home of prospective borrowers, and pressured appraisers to obtain a certain home value or not receive any future Ameriquest appraisal assignments; (6) that the Ameriquest parties engaged in acts and practices which resulted in fabricated and/or inflated income information for prospective borrowers, and/or non-existent or inflated income information for prospective borrowers, and/or non-existent or inflated amounts of assets for prospective borrowers on loan applications, i.e.: borrowers who would have failed to qualify for said loans without the fabricated or inflated income and or assets; (7) that the Ameriquest parties engaged in acts and practices that encouraged borrowers to ignore the Truth in Lending Act and Real Estate and Settlement Procedures Act disclosures, misrepresented that these disclosures are not representative of the actual loan terms the borrower will receive, or otherwise disparaged the accuracy and relevance of the required federal disclosures; and (8) that the Ameriquest parties failed to timely fund borrowers' loans at the close of the applicable rescission periods, a practice that resulted in costs to consumers, including, but not limited to additional interest costs.

      c. **Describe how the predicate acts form a "pattern of racketeering activity"; and**

The predicate acts have related and continue to relate to each other as part of a common fraudulent and extortionate scheme designed to defraud Plaintiffs of monies, property and other benefits under false pretenses. The pattern is discernible, because it is repetitious activities to assure that the records for the bloodline Robert L. Rice's descendants remain erroneous. Even when the genealogical investigation of Lorraine Escobar resulted in a determination that Robert L. Rice was Yavapai, Defendants continued to attempt to affect the results adversely.

The Attorney General of the State of Texas also found that the Ameriquest parties engaged in trade or commerce within the meaning of the DTPA by making loans to borrowers. They advertise, offer, solicit sales of, and sell real estate secured loans and related goods and services to Texas borrowers. They engaged in the business of making loans to Texas borrowers that were secured by those borrower's homes. The Ameriquest parties used misleading and deceptive promotions, marketing and sales techniques to induce homeowner's to refinance their mortgages and consolidate their debts using Ameriquest parties' real-estate

11

secured loan mortgages and consolidate their debts using the Ameriquest parties' real-estate secured loan products. The AG also found that in the course of their dealings with borrowers and in the furtherance of their own direct pecuniary and business gains, the Ameriquest parties committed deceptive acts, or made material misrepresentations or omissions in violation of the DTPA.

During its investigation, the AG also found that in its course of dealings with borrowers, and in furtherance of their own direct pecuniary and business gains, the Ameriquest parties acted in violation of the Texas Finance Code, TEX. FIN. CODE ANN., Subtitle E of Title 3 and Subtitles A and B of Title 4, relating to the business of making retail residential loans to borrowers in Texas.

Plaintiff was one of the borrowers who was injured by Defendant Ameriquest.

**d.    State whether the alleged predicate acts relate to each other as part of a common plan.**

**If so, describe in detail.**

Response: Yes.

As described above in Paragraph c, above, and in Plaintiff's Second Amended Complaint, the predicate acts of mail and wire fraud (fraudulent misrepresentations disseminated via the U S mail, facsimile transmission, email and telephonically), extortion (conduct of perpetrators designed to force Plaintiff to conform out of fear from threats), and fraudulent accounting practices (carving a larger percentage of gaining income and investment income for perpetrators than is their rightful share), have been ongoing as part of the Defendants' fraudulent and extortionate scheme at least since 1998, and are still ongoing. Plaintiff has no reason to believe that this scheme and these activities will not continue until such time as this case is decided on it merits.

**6.    Describe in detail the enterprise for each RICO claim. A description of (tie enterprise shall:**

**a.    State the names of the individuals, partnerships, corporations, associations, or other entities constituting the enterprise:**

The Defendants named in Paragraph 2 above are the individuals who were

12

associated in fact as the "enterprise" in this case.

The following persons constitute an Enterprise: All Defendants have conspired with each other in an "enterprise" to injure Plaintiff. The "enterprise" is operated not just by upper management, but also by lower-rung participants in the enterprise who are under the direction of upper management of Defendants. The enterprise is also operated and/or managed by others associated with the enterprise who exert control over it. An enterprise may be composed of "any union or group of individuals associated-in-fact, although not a legal entity". In this case, several groups of Defendants associated and conspired to deprive Plaintiff of monies and/or property to which she is entitled.

**b. Describe the structure, purpose, roles, function, and course of conduct of the enterprise:**

Please refer to Paragraph 2 above which is incorporated herein by reference.

**c. State whether any Defendants are employees, officers, or directors of the enterprise:**

Answer Yes. Please refer to Paragraph 2 above which is incorporated herein by reference.

**d. State whether any Defendants are associated with the enterprise.**

Answer. Yes.

State whether the claimant is alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or members of the enterprise; and some Defendants are individuals or entities separate from, but associated with the enterprise. Some Defendants have a dual capacity as being part of the enterprise and members of the enterprise.

Each separate Defendant joined with the other Defendants to conspire to take away constitutionally protected rights belonging to Plaintiff, as well as money and property.

The Defendants are members of the enterprise (Board of Directors, Officers, employees, advisers), but also have an existence separate and distinct from the

13

enterprise (when operating outside of the scope of their authority.)

e. If any Defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments or victims of the racketeering activity.

The Defendants are perpetrators.

7. State and describe in detail whether the claimant is alleging that the pattern of racketeering activity and the enterprise are separate or have they merged into one entity.

The pattern of racketeering activity is separate from the enterprise. The pattern is used to influence and control the conduct of the entities and persons within the enterprise.

The racketeering activity differs from the activities of the enterprise Instead, the racketeering activity is used to influence or control conduct of the enterprise.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

The Defendants have engaged in such systematic and numerous predicate acts on such a continuous basis that there is a pattern of racketeering activity.

The Defendants have influenced and controlled these activities of the enterprise and thereby have fraudulently denied payment of monies and other benefits to Plaintiff. Please refer to Paragraph 2 above which is incorporated herein by reference.

9. Describe what benefits, if any, the enterprise and each defendant received from the pattern of racketeering.

The benefits received by Defendants include profits that they divide among themselves. The Defendants also benefit from investments they make with the money.

14

10.    Describe the effect of the activities of the enterprise on interstate and foreign commerce.

Please refer to Paragraph 2 which is incorporated herein by reference.

11.    If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

a.    State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

Each Defendant received a share of the income from the pattern of racketeering activity or through the collection of an unlawful debt.

b.    Describe the use or Investment of such income.

The income is believed to have been used to further the racketeering activity, and to make investments, as well as part of the money to be distributed among Defendants.

12.    If the complaint alleges a violation of 18 U.S.C. 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

Please refer to Paragraph 2, above, which is incorporated herein by reference. Plaintiff reserves the right to supplement this answer after discovery.

13. If the complaint alleges a violation of IS U.S.C. § 1902-u, provide the following information:

a. State who is employed by or associated with the enterprise; and

Please refer to Paragraph 2, Defendants, A-U above, which is incorporated herein by reference

b. State whether the same entity is both the liable "person" and the "enterprise" under 1962(c).

Please refer to Paragraph 6, a-e above, which is incorporated herein by

15

reference.

14.     If the complaint alleges a violation of 18 U.S.C. 1962 (d), describe in detail the alleged conspiracy.

Please refer to Paragraph 2 above, which is incorporated herein by reference. Plaintiff reserves the right to supplement this answer after discovery.

15.     Describe the alleged injury to business or property.

Please refer to Paragraph 2 above, which is incorporated herein by reference.

Plaintiff reserves the right to supplement this answer after discovery.

16.     Describe the direct causal relationship between the alleged Injury and the violation of the RICO statute.

Please refer to Paragraph 2 above, which is incorporated herein by reference Plaintiff reserves the right to supplement this answer after discovery.

17.     List the damages sustained for which each defendant is allegedly liable.

Please refer to Paragraph 2 above, which is incorporated herein by reference. Plaintiff reserves the right to supplement this answer after discovery.

18.     List all other federal causes of action, if any, and provide the relevant statute number.

Causes of action in the Second Amended Complaint are RICO, Deceptive Trade Practices, and Suit to Remedy Impaired Title and Declaratory Judgment.

19.     List all supplemental state claims.

Suit to remedy an impaired title and Declaratory Judgment.

20.     Provide any additional information that you feel would be helpful to the Court in processing your RICO claim.

Plaintiff reserves the right to supplement this response at a later date after

16

discovery.